FILED

OCT 2 4 2018

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____JAD_____ DEP CLK

5:18-CT-3293-D

Lambert v. Searchie Inc.
Civil Action No. _____ Complaint

1. This proceeding is brought in part pursuant to Section 1331, 2201, 2202 of Title 28 of the United States Code and the relevant provisions of the Federal Tort Claims Act (28 U.S.C. §1291ff), Section 1583 of Title 42 of the United States Code; Section 10(b) of the Administrative Procedure Act 5 U.S.C. § 703); the First and Fifth Amendments of the Constitution of the United States, the relevant provisions of the Civil Rights Acts of 1871, 42 U.S.C. 1985 and such other Constitutional and Federal laws as may be relevant hereto.

2. Plaintiffs, Miami Production Studios, Inc (hereinafter "MPS"); Miami Works (hereinafter "MW") and Local Big APP (hereinafter "LBA") are Corporations incorporated under the laws of the State of Florida and having their principal office and place of business at 13825 SW 139 Court Miami, Florida 33186

3. Plaintiffs, Glen Lambert (hereinafter "GL") and Elayna Barone (hereinafter "EB") are individual residents of Florida with resident address at: 13828 139 Court Miami, Florida 33186 or 204 Gillespie Street Fayetteville, North Carolina 28301 Cell Block C-B Cell #219

4. Defendants are Searchie Inc and VP Dyer Bennet for conspiring with the United States Government, its agencies and employees there of, some of whom are investigative or law enforcement officers thereof, who, acting in their ministerial capacity, did conspire with Defendants to interfere with and violate, and did interfere with and violate; plaintiffs rights and privileges; and did deprive Plaintiffs of their property without due process of law, in conflict with the laws and Constitution of the United States, as more fully appears here in below.

5. The plaintiffs were conducting Documentary Film production in the year of 2016; "Helping the Homeless Get on their Feet," "Helping Small Businesses in Miami, Florida Grow," "HUBB small business initiative" and "How to Catch a Predator 2.0." The Defendant Mr. VP Dyer Bennet was a feature on "How to Catch a Predator 2.0" in Fayetteville, North Carolina. He responded to Plaintiffs backpage.com advertising, making a phone call agreeing to $160.00 for "Full Service" (Sex with no condom) with what the Defendant believed to be a prostitute. MPS had cameras rolling when Defendant came into the Hilton Hotel Suite undressing, wiping his penis with baby wipes as instructed, while verbally agreeing to oral sex first with no condom. The Defendant placed $160.00 on the dresser as he climbed into a full size bed butt naked laying on his back with a huge smile on face with his extremely small penis and tiny testicles exposed while he touched himself. That's when the Plaintiff came out of the closet screaming into a walkie talkie turning on all the lights in the room. The Defendant's fantasy had clearly turned into a nightmare. The plaintiffs MPS handed the naked defendant his clothes while questioning him with question such as: where do you work? Why are you doing this? Are you married? Any children? Do you know you're ruining our country by engaging in this type of activity? etc, etc. The plaintiffs took a picture of Defendants I.D., told him the $160.00 was evidence, and that plaintiffs would be in touch with him within a week or 2 weeks. That was the first time the plaintiff and the Defendant ever met each other. The Defendant was caught butt naked on MPS Documentary Pilot "How to Catch a Predator 2.0."

6. Two weeks later, 10·12·2016; The plaintiffs call Searchie Inc to set up a meeting with The Defendant which he agreed to meet at a Hilton Hotel where the first initial agreement between Searchie and MPS took place. Searchie Inc would soon become the main sponsor for the show and operation "How to Catch a Predator 2.0" providing financial resources, Law Enforcement support through out the United States through Searchie contacts and other sponsors and more. The Defendant ask what would MPS need immediately to which MPS replied Police Equipment and Law Enforcement support through out the country while they traveled continuing the Documentary Pilot. That evening Defendant brought a huge box loaded with Police Equipment such black latex gloves, finger printing ink and paper, DNA cotton swabs, Forensic Flash light and glasses, Police Body Camera, and more. Defendant was to have more Police equipment the next day.

7. That night MPS saw a news report from Fayetteville, North Carolina from 2 weeks prior to their return. MPS left North Carolina that night. The next afternoon 10-13-2016, MPS explained the fox report to the Defendant and the defendant said he would call his friends to make that go away. Defendant explained that he was on board with fighting Human Trafficking and help out in any way he could using his contacts in Law Enforcement. The Defendant wrote MPS a letter via email thanking MPS for the life changing experience and that he was in John School online. He asked for 2 Power Point Presentations from MPS to present at a Searchie Inc meeting January 2017.

8. The Defendant was in constant communication with MPS via cell phone calls and emails. MPS actually believed that their documentary was making positive headway because they had the VP of Searchie Inc on board with fighting Human Trafficking and Producing the Documentary Pilot that would be presented to the Discovery Channel via MPS Atlanta TV connections. The Defendant was actually keeping close tabs on MPS through electronic monitoring and eavesdropping, plotting on MPS and waiting for his opportunity to conspire with Law Enforcement officers, Federal Officials and State Officials against MPS.

9. MPS began using the Police Equipment provided by the defendant VP of Searchie Inc immediately. The Police Body Camera was a special camera that fed the footage recorded to a cloud which only MPS and Searchie Inc had exclusive access to. The only city that Police Body Camera was used to video tape was in Birmingham, Alabama at a Homewood Suites Hilton Hotel in Homewood, Alabama on 10-15-16. The police body camera had a short memory storage and was full on that day. MPS being on the road had no time to download software for police body camera that defendant had emailed over.

10. The defendant then used the footage from the Police Body Camera given to MPS as the tool to begin the malicious conspiracies. He sent to the footage to his buddies (co-conspirators) in Prattville, Alabama PD which lead to an investigation and the illegal arrest of MPS in Miami, Florida on 1-3-17.

11. Prior to the U.S. Federal Marshalls arresting plaintiffs at MPS Inc Miami Office, The Defendant and his co-conspirators issued illegal complaints, affidavits and warrants and throughout their improper proceedings against MPS were sharply critical in carrying out the unlawful arrest of MPS.

12. After the arrest of MPS in the Afternoon, plaintiffs' friend was asked to call Defendant Oyer Bennet to inform him of what just happened. The Plaintiff thought that the Defendant would help in one way or the other unaware that it was the defendant who had conspired with State and Federal Officials under the color of law.

13. The evening of 1-3-17 The Department of Homeland Security illegally searched the MPS office and illegally seized property from The MPS office. 4 Desktops, 8 laptops, 10 cell phones, 3 external Hard drives, thumb drive, etc, etc. The plaintiff only knew of the Department of Homeland Security's illegal search and seizure through MPS friend who was on the scene. Friend of MPS was told by a Federal Official of DHS "Your friends are in some deep shit."

14. Due to the defendant's co-conspirators involvement, Federal Marshalls illegally arrested the plaintiff on 2-3-2017 Dept of Homeland Security Special Agent Bobby Smith, an investigator, induced the plaintiff to confess involuntarily by saying to Plaintiff "This is the only time you can help yourself and the DHS is in charge of this investigation." Giving plaintiff no option but to try to help himself by co-conspir operating with video confession of his operation "How to Catch a Predator 2.0" and signing over his cell phone along with other electronics without having a lawyer present. Throughout the entire time Plaintiff was incarcerated preparing his defense for trial the DHS withheld exculpatory evidence that would've surely been very beneficial for plaintiffs defense.

15. Due to the defendants conspiracies, abuse of the legal process occured numerous times; clear indicators that an unconstitutional breakdown in the process has occured; violation of the Due Process clause.

16. Due to the defendants co-conspirators, Evidence and burden of proof relief was denied by the courts of the States, by the DHS and by his defense counsel. Plaintiff had supporting documents, emails, and videos that his Trial lawyer Paul McDaniel in Alabama, never wanted the evidence to see the light of day as well as the full truthful defense that plaintiff

wanted to present at trial. Plaintiff made numerous request for F.O.I.A. request to his lawyers to request with the F.B.E./DHS for information that the Bureau/DHS/Federal Government/NCIC Data Base committing. Defendant and co-conspirators committed flagrant and serious misconduct in the defendants' conspiracies to prevent officers of law, lawyers and court officials from performing their duties directly and indirectly.

17. Due to the Defendants co-conspirators the plaintiff GL was retaliated against for several reasons. Retaliation began because MPS was producing a whistle blowing Documentary that had the Defendant in it as one of the mega stars due to his former career as a Sheriff and Detective in the Law Enforcement community. A man of the law who breaks the law because he feels that he is the law or that he is above the law. Whistle blower based retaliation. Racially based retaliation because plaintiff is Black African-American. Retaliation for exercising Constitutional Rights in producing the Pilot Documentary and while incarcerated. The plaintiff is being and has been retaliated against for being a jailhouse lawyer helping other inmates write pro sé motions, lawyer complaints and judge complaints to the BAR Association, Grievance for officers, jail house practices and for unconstitutional conditions of the jail. The plaintiff may also be facing retaliation for the way he demanded the public defenders in Alabama and North Carolina to do their jobs; for example in Alabama the plaintiff would write his messages to his lawyer leaving messages on voice mails for the Directors, Supervisors, other lawyers and assistants including lawyer on case, his lawyer knew that plaintiff was serious about his case. In North Carolina he did the same thing through letters because the phone calls were not free, so the plaintiff would write the Clerk of Courts, Bernard Condlin and his lawyer to make his point flexing his rights. He also wrote many motions and letters for other inmates as well. Retaliation for being a jailhouse lawyer.

— Information and Belief —

18. Plaintiffs waived Extradition hearings to be transported to Alabama from Miami after the Federal Marshalls arrested plaintiff. 2 charges in the State of Alabama; Robbery in the 2nd Degree Class B felony and Impersonating Police Officers Class C felony. The plaintiffs first offer by the State of Alabama was 25 years imprisonment to life. Plaintiff was then given time served on a plea deal serving 12 months in the Jefferson County Jail being released on April 4th, 2018. The plaintiffs spent 4 days in a dog patty wagon from Miami, FL to Birmingham, Alabama then 4.4.18 another 4 days on the dog patty wagon from Birmingham, Alabama to Fayetteville, NC arriving 4.8.2018. The Plaintiffs' wife was extradited back to Alabama June 2018. I Took the plea deal 2.21.2018. The Plea Agreement with the State of Alabama was this: Plaintiff would plead guilty to two counts of Robbery in the 2nd Degree while two counts of Impersonating a Police Officer were dismissed. Along with 36 months of unsupervised Probation. Before leaving for North Carolina a check for holds/warrants everywhere was done; cities, town, counties, states and Federal with nothing showing up. Plaintiffs' had their lawyers Paul McDaniels and Tana Flatter check frequently for holds and warrants. The Department of Homeland Security's Investigator Special Agent Bobby Smith came to interview plaintiff in Alabama along with Homewood PD, Bessemer PD, and Birmingham PD. The confession plaintiff gave them was the same plaintiff gave to Fayetteville PD Human Trafficking Detective K. Lucetti November 2017. The Department of Homeland Security Investigator said plaintiff left his camera behind in the Homewood Suites Hilton Hotel yet the investigator did not have the camera to show plaintiff. The videos that Law Enforcement had in Alabama all came from the Defendant Dyer Bennet because only he had access to the videos that the Plaintiff was making. Plaintiffs MPS always had cameras rolling when Impersonating a Police Officer. The Defendant gave the Police Body Cameras to plaintiff using the videos is the main tool to commit the conspiracies with co-conspirators. The Defendant lied to the Fayetteville, N investigators about how he knew the plaintiffs MPS Inc and defendant said that plaintiff tried to extort him for $20,000. The defendant committed Perjury and Obstruction of Justice without charges being brought against him. The Plaintiff was kept completely separated from his wife EB, in the dark unaware of the others whereabouts, location, health, mental health, and plaintiffs were prohibited from having any type of communication with each other. Jefferson County Court appointed lawyers for plaintiffs wife offered free services numerous times to file a divorce against Plaintiff so wife could testify in exchange for her release, Plaintiffs wife declined every time. The plaintiffs attorney Paul McDaniel in Alabama did not want to use Plaintiffs defense at trial unless he could use a NGRI defense. The Plaintiff did extremely well on his Mental Health Evaluation denying him the use of an NGRI defense due to the fact Plaintiff was not Insane and is highly intelligent making him competent to stand trial. The Forensic Psychologist recommended to Plaintiff that he take a plea Deal. The Plaintiff told Forensic Psychologist that his lawyer knew that the results would be what they were and Plaintiff at that point was upset with

Paul McDaniel for wasting time. Paul McDaniel shot down all the Plaintiffs defenses for his case, attempting to become the master of the Plaintiffs case. Paul McDaniel did not mind Plea Bargaining as his way of fighting for the plaintiff. The Plaintiffs attorney in Alabama along with the D.A. Shawn Allen, as well as his attorney Mike Onufer and D.A. in Fayetteville, NC didn't want to prosecute the case nor did the Tribunals want the truth to come out. The plaintiff is absolutely sure that the Department of Homeland Security does not want the truth to come out. The Plaintiffs video Documentary is in Federal custody, or has been destroyed by now. The Federal Government never brought charges against the plaintiff. No tribunal has been eager to go to Trial with the Plaintiff and the Plaintiff has begged for a fast and speedy Trial in both Alabama and North Carolina. The plaintiff is now wanted out of Elmore County, which he has never been to, for two counts of Impersonating Police Officer. The plaintiff had a routine and he stuck with that routine. Plaintiff MPS Inc would place ad on Backpage.com, the customer would walk in the room making their donation, Plaintiff would come out from hiding, pretending to be a Police Officer, asking questions similar to an intervention with a drug addict, confiscate money and release the whore mongers every time. The Plaintiff has never just Impersonated Police Officer without the other factors and the Plaintiff video taped every event for documental purposes. The Federal Government has over 100 hours of illegally seized footage. The Plaintiff has many unanswered questions about the Extradition to Alabama such as where was plaintiff in Elmore County? When did they indict plaintiff? Elmore County is the neighboring county, what city? or what Town? How many victims? What's the Story? What evidence do they have? The plaintiff was on AL.com for crimes committed in Alabama. Plaintiff was in Jefferson County Jail 10-12-2017. Google search engine even knew that, it was no secret. Why didn't they come foreward when the Plaintiff was there in custody? Once again, The plaintiff believes very strongly that the Defendant is still conspiring against the plaintiff with other state officials under the color of law.

## -Statement of Facts-

19. After reading about the Habeas Corpus/Extradition Procedures I've learned alot about the process. The authority in the asylum State of North Carolina still have to consider the Law and the Facts. Four main questions have to be determined, Are the authenticated papers or Warrants from the Demanding State on their face? Is the plaintiff a fugitive? is one of the questions that has to be determined. Was the plaintiff charged with a crime? Was the plaintiff actually in the State during the time and date of offense? Is the plaintiff the person named on the warrant? are the other questions they have to answer. When the plaintiff was arrested by Federal Marshalls in Miami, Fl plaintiff waived his right to fight Extradition agreeing to stand trial in Alabama. Plaintiff Served time in Birmingham's Jefferson County Jail for 15 months. Finished serving time for the State of Alabama 2-21-2018. Plaintiff was not picked up on North Carolina Fugitive from Justice warrant until 4-4-2018 arriving four days later in Cumberland County Detention Center 4-8-18 to face charges and stand trial. Plaintiff waived his right to fight Extradition to Fayetteville, NC. On April 20, 2018 Plaintiff finds out he has holds and is wanted back in Alabama on Impersonating Police Officer charges. Plaintiff thought it was a mistake yet the jail would only make things clear to him until after his Plea Hearing on 8-29-2018 where the plaintiff pled guilty for time served on misdemeanors charges of Soliciting Prostitution and Impersonating Police Officer charges. Plaintiff inquired with the jail as to why he was not being released, plaintiff should have been a free man. Plaintiff had no information and asked the jail to let him know what was going on with Alabama hold. The Plaintiffs lawyer Mike Onufer of Fayetteville, NC told Plaintiff he would see what he could find out yet Plaintiff believes that his attorney conspired with the Defendant as well. Attorney Mike Onufer knew about Fugitive department here in the jail, he skipped out on the Plea Hearing claiming he had a emergency when really Onufer didn't want to continue to lie to Plaintiff because Onufer knew that Plaintiff was aware of the conspiracy at hand. Onufer knew that Plaintiffs wife had been extradited 2 months prior to Plaintiffs plea agreement yet kept quiet about it because he knew Plaintiff would react and ruin the conspiracy. Onufer urged Plaintiff against going to trial saying that the DA did not want to prosecute the case and that the DA would give the Plaintiff what he wanted which was time served with no probation. Had Plaintiff known about his wife being extradited Plaintiff would have demanded a Trial and Onufer along with other co-conspirators knew that Plaintiff would've went that route due to the abuse of process and unlawful extradition of his wife due to the Defendants conspiracy. On 8-30-2018 CPL C. Blevins from the fugitive Department tells Plaintiff that nothing could be done in regards to Alabama until Plaintiff finished with North Carolina. Blevins is the first to inform Plaintiff about his wife and Blevins says to Plaintiff "I thought some one was going to tell you." Plaintiff believes that it's all apart of the conspiracy with defendant because CPL C. Blevins was responsible in notifying Plaintiff yet Blevins was also conspiring with Defendant against Plaintiff. Blevins tells Plaintiff that Elmore County a neighboring county to Jefferson County has a warrant for Plaintiff for offenses of 2 counts of Impersonating Police Officers on the date of 10-12-2017. Now the Plaintiff is ready to fight back against the conspiracy which has now become very clear to him.

20. On 10-12-2017 the plaintiff was incarcerated in Jefferson County Jail. If they, Elmore County, made a mistake on the date meaning 10-12-2016 The Plaintiff was in Fayetteville, NC recieving Police Equipment from Searchie Inc VP Dyer Bennet. Plaintiffs called defendants office, spoke to his secretary, had two meetings with defendant about Fighting Human Trafficking and the second meeting he dropped off a box full of police equipment. Plaintiff then drove to Alabama stopping in the State of Georgia briefly than landing at the Homewood Suites Hilton Hotel in Homewood, AL on 10-14-2016 where the videos came from on the day of 10-15-2016. The videos that were used in this conspiracy came from that location which Defendant used for his conspiracies. Plaintiffs bank account information and debit card transactions will confirm his locations. His cellphone carrier will confirm his locations. Defendant VP Dyer Bennet's cell carrier will confirm his location. Phone calls made by Plaintiff to Defendants office, videos from the two Hilton Hotels where defendant met with Plaintiffs will confirm Plaintiffs locations. There are several ways we can confirm that the alleged offenses in Elmore were not the Plaintiffs. Plaintiff is for certain that it's all apart of the Defendant Searchie Inc VP Mr. Dyer Bennet's Conspiracies against the Plaintiff.

21. Plaintiff also has evidence of an emailed letter from the Defendant Searchie Inc VP Mr. Dyer Bennet praising the "How to Catch a Preditor 2.0" Documentary/Operation, 2 Power Point Presentations with defendant asking for several changes to be made, several other emails between plaintiffs and defendant along with several phone calls between Defendant and Plaintiffs MPS Inc. The Plaintiffs Backpage.com account will also confirm locations especially for the date in question in regards to Elmore County Alabama on 10-12-2016. The confession from Defendant of when the Plaintiff allegedly tried to extort or blackmail $20,000, what day was that? Plaintiff needs to see that part of the discovery immediately. The entire Discovery needs to be seen by the Plaintiff MPS Inc, Attorney Mike Onufer kept the Discovery from the Plaintiff. Conspired to keep the Plaintiff in the Unknown of his own case.

— Searchie Inc Vice President Mr. Dyer Bennet's Co-Conspirators —

22. The State of Alabama, the County of Jefferson, the County of Elmore, The Public Defenders Office of Jefferson County, Searchie Inc Law Enforcement Agencies in Alabama whom were/are Police Equipment Customers, AL.com and any others in Media and News, Cumberland County Detention Center, the County of Cumberland, The State of North Carolina, Jefferson County Jail, Elmore County Jail, The Public Defenders Office of Cumberland County, The Federal Marshalls, The Department of Homeland Security in Alabama & Miami, The United States Government, Department of Justice, Department of ~~Justice~~ Defense, Paul McDaniel, Judge A. McDaniel, Attorney Mike Onufer, Mr. Nathan McMinus, Prattville PD, Homewood PD, Gabriel Furgeson of Homewood PD, Special Agent Bobby Smith of DHS Alabama, Fayetteville PD, Fayetteville Sheriffs, Fayetteville Human Trafficking Detective K. Lucetti, CPL C. Blevins, CCDC Sheriff SSGT J. Serrano, Elmore County Copts J. Stroud and more.

23. The Plaintiff is requesting a Fact-Finding Investigation so that Fact-Development procedures can reveal additional facts of conspiracies that Plaintiff has no way executing.

24. "Criminal Intent by Corporations by it's officers or directors will hold corporations liable" See Griffin v. Breckenridge 403 U.S. 88

25. Following the indictment returned 10-31-2017 by The Grand Jury of Jefferson County, Defendants Co-Conspirators Sgt Carr did an interview with AL.com. The Defendants Co-Conspirators issued a deceptive press release that falsely indicated to the public that plaintiffs MPS Inc were out committing Robberies for the heck of it, Impersonating Police Officers for the fun of it, when Defendant's co-conspirators knew that their statements were un[true].

26. We believe the State courts in Alabama and North Carolina decisions clearly leads to the conclusion that the actions of defendant and his Co-Conspirators against MPS Inc were outside discretionary functions or duties of state officials and federal officers. The conspiracies had become undisputable; a Point of no Return in a sense.

## — For A First Cause of Action —

27. By bringing unauthorized proceedings against plaintiffs MPS Inc without notice or warning as required by law, defendant and his co-conspirators violated the rights and privileges of the Plaintiffs under law and the United States constitution, including their rights to due process of law.

28. By these unauthorized actions outside their discretionary functions and duties, in excess of their lawful authority and their discretionary powers, the defendant's co-conspirators sought to suppress legitimate business activities of the plaintiffs directly and indirectly that Congress did not give them authority to regulate, punish the plaintiffs and accomplish the ruin of their business reputation through false imprisonment, publicizing the illegal complaint and orders, issuing press releases that were not accurate or true violating the rights and privileges of the Plaintiffs under law and the United States constitution.

## — For A Second Cause of Action —

29. The Defendant's co-conspirators, in excess of their authority and discretionary functions and powers, did issue administrative orders, illegal and punitive in nature, deliberately causing the plaintiffs substantial personal and economic harm, as aforesaid.

## — For A Third Cause of Action —

30. By the aforesaid unauthorized and illegal activities, which caused Plaintiffs to deplete financial and human resources, the Defendants' co-conspirators discouraged and chilled the campaign of criticism Plaintiffs MPS Inc directed against them and thereby deprived the Plaintiffs MPS Inc of their rights to free expression guaranteed by the First Amendment of the United States Constitution.

## — For A Fourth Cause of Action —

31. By furnishing their complaints to interested persons without furnishing Plaintiffs MPS Inc answers as well as by failing to include Plaintiffs MPS Inc answers and other papers in the file made available to the public by the defendant's co-conspirators, co-conspirators exceeded their authority in violation of Section 9(a) of the Administrative Procedure Act, 5 U.S.C. §558(b), and, in violation of Plaintiffs MPS Inc. rights to due process of law and right to privacy guaranteed by the United States Constitution, sought to subject Plaintiffs' unregulated business affair to harm, discredit them interfering with non-regulated business operations.

## — For A Fifth Cause of Action —

32. By issuing a deceptive press release to the Media that falsely indicated the Plaintiff MPS Inc were about committing felonies Robberies and Impersonating Police Officers to commit the Robberies and that Plaintiffs only targeted illegal immigrants when Defendant and defendant's co-conspirators knew or should have known they did not. The Defendant and co-conspirators violated Plaintiffs MPS Inc.'s due process of law, for the news release by Law Enforcement and court officials damaged plaintiffs MPS Inc.'s credit standing and put pressure on Plaintiffs MPS Inc to counter false charges to which the release was devoted, and had a serious affect upon the public standing, the willingness of customers to do business with them and the businesses with which they were associated, such as plaintiff's LBA, MW, MVL, and SAG. The new release had serious affect upon the Plaintiffs personal standing with family and friends not willing to get involved because they feared similar retaliation or false imprisonment as well.

## — For A Sixth Cause of Action —

33. Those Co-Conspirators of the Defendant who were law enforcement and investigative officers, lawyers, and others acting in their official capacity did act outside the Scope of their authority and abuse legal process by continuing to prosecute unlawfully brought complaints against plaintiffs MPS Inc.

### — For A Seventh Cause of Action —

34. Those Co-Conspirators of the Defendant who were law enforcement and investigative officers, lawyers and others acting in their official capacity did act outside the scope of their authority and maliciously prosecuted Plaintiffs MPS Inc in the State of Alabama Court and North Carolina Court foresaid.

### — For A Eigth Cause of Action —

35. The Defendant and Co-Conspirators, by wrongfully cause the publishing of false information about the Plaintiffs MPS Inc. and wrongfully making public distorted information about the plaintiffs, did invade the privacy of the Plaintiffs and and cause them injury.

### — For A Ninth Cause of Action —

36. The Defendant's Co-Conspirators did negligently and with intent to harm the plaintiffs MPS Inc. publish information about the Plaintiffs MPS Inc causing the Plaintiffs harm.

### — For A Tenth Cause of Action —

37. The Defendant's Co-Conspirators did in excess of their authority upon the facts stated herein above, trespass on plaintiffs MPS Inc and LBA property.

### — For An Eleventh Cause of Action —

38. By reasons of all the defendant's co-conspirators illegal actions plaintiffs GL, EB, MPS Inc, MW, MVL, SAG, and LBA and their business incurred heavy financial and emotional burdens and were damaged immeasurably, as well as a Institutions with which the Plaintiffs had a substantial connections.

### — Statement of Facts and Beliefs —

39. Plaintiffs GL and EB businesses and business deals before unlawful Imprisonment; Miami Production Studios Inc (MPS), Local Big App (LBA), Mistress Victoria Lane.com (MVL), Miami Works (MW) and members of Screen Actors Guild (S.A.G.) Local Big App was to become the business Directory for the city of Doral, Florida; Local Big App had. 5 million dollar investor from Alumni Havard Film School. Mistress Victoria Lane.com had 2 Condo Location; and 3.5 million dollar investor from Sunny Isles, Florida. Miami Production Studios was in major talks with 3 TV network in Atlanta, GA TruTv, The Cannibus Channel.com and Investigative Discovery Channel.

40. The Documentary Pilot "How to Catch a Preditor 2.0" was stolen by Federal Authorities under the Defendants order Searchie's Inc VP Mr. Dyer Bennet was supposed to become a major sponsor of the M.P.S. Inc Operation/Pilot Documentary after he himself was caught on camera but t-naked awaiting sex with a prostitute with no condom going through the experience unexpectedly. The Defendant wrote a Thank You letter to MPS Inc called Detective K Lucetti at Human Trafficking Department to speak highly of Plaintiffs MPS Inc detailed the actions of Plaintiffs, Plaintiffs MPS Inc wrote Two Power Presentations for the Searchie Inc Sponsorship Presentation in Jan. 2017, Defendant gave the Plaintiffs MPS Inc. tens of Police Equipment for How to Catch a Preditor 2 including Police Body Camera. The Defendant Searchie Inc VP Mr. Dyer Bennet then used the videos to conspire to bring about the deprivation and injury to Plaintiff MPS Inc person and business.

Wherefore, Plaintiffs demand:

A. Judgement against the Defendant for the costs and expenses incurred by plaintiffs MPS Inc., MVL, MW, S.A.G, and LBA created their businesses that Defendant Searchie Inc single handedly destroyed with conspiracies and illegal activities in the amount of $500,000.00

B. Compensatory damages for injury to the business of the Plaintiffs in the amount of $7,500,000.00

C. Compensatory damages for the interferences on the civil Rights of the Plaintiffs in the amount of $15,000,000.00

D. Compensatory damages for the invasion of Plaintiffs Privacy in the amount of $4,000,000.00

E. Compensatory damages for malicious prosecution of Plaintiffs in the amount of $4,500,000.00

F. Compensatory damages for Abuse of Process against the Plaintiffs in the amount of $6,500,000.00

G. Compensatory damages for the trespass of the defendants co-conspirators in the amount $7,000,000.00

H. Compensatory damages for taking of the Property of Plaintiffs in the amount of $15,000,000.00

The Plaintiffs pray that this Honorable Court grant such other and further relief as may be just and proper.

Subscribed and Sworn to or affirmed before me this 2nd day of October 2018

My Commission Expires: 8-22-2022

Notary Public: X _Rosa E. Reyes_

Plaintiff Signature: X _[signature]_

(Seal: ROSA E. REYES, NOTARY PUBLIC, CUMBERLAND COUNTY, NC)